# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Janelle Jones, on behalf of LD, a Minor, <br><br> Plaintiffs, <br><br> v. <br><br> The United States of America, <br><br> Defendant. | Case No:     3:24-cv-4180-SAL <br><br> **COMPLAINT** <br> (Jury Trial Demanded) |

## NATURE OF THE CASE

Plaintiffs file this Complaint by and through undersigned counsel of record against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2410, 2671, *et seq.*, for negligent and reckless conduct leading to the hijacking of their Richland Two school bus in Columbia, South Carolina on May 6, 2021. As a direct and proximate result of Defendant's conduct, the Plaintiffs sustained actual injuries and damages, and in support thereof alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1. This action is an action for money damages brought pursuant to 28 U.S.C. §§ 2671, *et seq.* and under the common law against the United States of America.

2. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. § 1346(b)(1).

1

3. Plaintiff Janelle Jones is a citizen and resident of Richland County, South Carolina.

4. Plaintiff LD is the minor grandchild of Plaintiff Janelle Jones, who is her legal guardian, and is a citizen and resident of Richland County, South Carolina.

5. At all times relevant to this complaint, The United States of America has operated a United States Army Training Center conducting basic combat training at Fort Jackson in Richland County, South Carolina.

6. Under the FTCA, venue is proper in this Court both because it is the judicial district where the plaintiffs reside and because it is the judicial district wherein the acts or omissions complained of occurred. 28 U.S.C. § 1391(e)(1)(C); 28 U.S.C. § 1402(b); *see also* 32 C.F.R. § 750.32.

7. This action also arises pursuant to and involves questions requiring the interpretation of the laws of the United States.

8. Jurisdiction and venue are therefore proper before this court pursuant to 28 U.S.C. § 1331, § 1346, and § 1391.

## FACTUAL ALLEGATIONS

9. On the morning of May 6, 2021, minor Plaintiff LD had boarded her Richland Two school bus bound for Forest Lake Elementary School.

10. Private Jovan Collazo (hereinafter "Collazo") was in his third to fourth week of basic combat training with Alpha Company, 1st Battalion, 61st Infantry Regiment, 165th Infantry Brigade at Fort Jackson in Columbia, South Carolina.

2

11.     At the time of this incident, according to TD 350-6, it was the policy of the United States Army, and locally at Fort Jackson, to conduct "weapons immersion" training, which means introducing weapons to basic training recruits at "the earliest point in training" possible to make them comfortable with their weapons by being responsible for carrying them at all times.

12.     The Daily Staff Journal / Duty Officers Log (DA Form 1594) from the date in question opened with Item #1 the night before at 8:00 PM on May 5, 2021 and closed with Item #37 at 9:00 AM on May 6, 2021.

13.     The times on the DA Form 1594 were redacted in FOIA response; however it shows that Item #11 was a personnel count, showing zero weapons in the count. Beginning at Item #25, all subsequent weapons counts were redacted from the personnel counts. Upon information and belief, the reasonable inference is these redacted weapons counts either would indicate that a weapon may have been unaccounted for or that these weapons counts were found to be inaccurate.

14.     It is unknown whether any commanding officers were meeting accountability standards by conducting night checks or reviewing the personnel and weapons counts in the logs.

15.     According to a Fort Jackson spokesperson, at sometime around 7:00 AM, Collazo reportedly grabbed his issued M-4 carbine rifle and left his barracks as his unit was performing personal hygiene and preparing to eat breakfast after early morning physical training.

16. Collazo, who was subject to Fort Jackson's "battle buddy" system and is believed to have been on a roster requiring him to be accompanied when entrusted with his weapon, moved throughout the Fort Jackson base for some time, unaccompanied, and carrying the rifle he was given in his hands.

17. There is some indication that others in his unit witnessed Collazo's unauthorized elopement from the bunk area and possibly some behavior of concern, and records indicate some of the witnesses, after breakfast, waited outside an office to make a report.

18. The Army investigative records, AR 15-6, indicate that due to "inconsistent knowledge" among the cadre of what to do in an Absent Without Leave (AWOL) situation, there was about a 45-minute delay of notification up the chain of command.

19. It was learned in the investigation that part of the issue was that the cadre lacked sufficient AWOL battle drill training to have adequate familiarity and "working knowledge" of the procedures.

20. It was further noted in the investigation that, despite giving young new trainees weapons immersion by entrusting them with a rifle early in their training, the AWOL battle drill procedures failed to contemplate the foreseeable situation of an AWOL subject who was also armed with a weapon, thereby preventing appropriate escalation of action.

21. At some point, an officer came across Collazo and was asked by Collazo if he knew to get off the base.

22. A chase ensued, and Collazo eventually went over a relatively low chain link fence which had only outward facing barbed wire.

23. After managing to get off the base with the rifle still in his hands, Collazo attempted to flag down drivers on I-77 before eventually boarding Plaintiff's Richland School District Two bus at a stop near Percival Road and Eagle Park Road.

24. A video from the bus released by Richland County Sheriff Department showed Collazo pointing the rifle at the driver and demanding the driver shut the door and drive.

25. Collazo, who reportedly was becoming frustrated by questions from the children, ordered them to the front, had the driver stop the bus, and told the bus driver and children to get off.

26. Collazo then drove off in the bus for about a mile before abandoning it at Old Percival and Quincy Road.

27. Collazo left the rifle sitting on the open bus and was later taken into custody while wandering through a neighborhood in search of civilian clothing.

28. An initial evaluation after his arrest found Collazo to be suffering from schizophrenia, and two evaluations found that Collazo suffered from a mental disorder that made him unable to distinguish moral and legal right from wrong.

29. It was reported that Collazo was exhibiting anxious behavior and was convinced someone was coming after him or his family and he was attempting to flee home to New Jersey.

30. Collazo was charged with 19 counts of kidnapping, armed robbery, carjacking, pointing and presenting a weapon, and other charges.

31. Collazo was found not guilty of all charges by reason of insanity and was sent to a facility designated by the South Carolina Department of Mental Health for no more than 120 days.

32. Plaintiffs filed a claim via Form F95 with the Department of the Army by serving it on the United States Attorney in South Carolina on June 10, 2021.

33. On January 29, 2024, Plaintiffs received a letter dated January 26, 2024 denying the claim.

## FOR A FIRST CAUSE OF ACTION
### Negligence, Negligent Training, Negligent Entrustment, and Negligent Security Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

34. Plaintiff hereby realleges the factual allegations from paragraphs 1-33 as though repeated verbatim herein.

35. Plaintiff brings this action for negligence against The United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2410, and 2671, *et seq*.

36. The United States is liable for the actions and omissions of its employees and/or agents that gave rise to this action.

37. The United States of America, by and through its employees and/or agents, owed common law duties to Plaintiffs and the general public, including:

   a. the duty to act in a prudent and reasonable manner with regard to their safety;

    b. the duty to ensure weapons it owns are stored and secured in a reasonably safe manner;

    c. the duty to not entrust weapons that may be used in a dangerous manner by its young and inexperienced soldiers in training;

    d. the duty to provide responsible and effective security operations;

    e. the duty to establish and enforce proper policies, customs, and regulations of its departments;

    f. the duty to properly evaluate candidates to disqualify those with known or knowable mental health issues; and

    g. the duty to supervise its soldiers, to properly train and retrain said soldiers, and to ensure policy is followed.

38. Upon information and belief, prior to accepting Collazo to enter the U.S. Army and go through basic training, the United States reviewed his background and performed certain evaluations on him.

39. To the extent no meaningful mental evaluations were performed, such a failure would be grossly negligent in light of him being trusted with a weapon.

40. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs and the general public to be reasonable in its conduct of recruiting new trainees.

41. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs and the general public to be reasonable in its conduct of entrusting new trainees with weapons.

42. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs and the general public to be reasonable in its conduct of storing, securing, logging, counting, and supervising weapons draws and possession.

43. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs and the general public to be reasonable in its policymaking with respect to weapons access and supervision.

44. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs and the general public to be reasonable in its training of personnel for reacting in a timely manner and with appropriately escalated response to dangerous situations which impact the public.

45. The United States of America, by and through its duly authorized employees and/or agents, breached its duty to Plaintiffs in not having adequate security fencing, surveillance, and personnel patrolling at its perimeters to prevent an armed AWOL event like the one in this case.

46. The United States of America, by and through its duly authorized employees and/or agents, breached duties owed to Plaintiffs in failing to keep them safe from danger and harm caused by exposure to armed soldiers with mental health issues.

47. The actions and omissions described herein were unreasonable, constituted the total absence of care, breached duties, and actually and proximately caused injuries to the young minor Plaintiff as a result of her being held captive for a period of time by an armed U.S. Army soldier on her school bus, causing her fear for her life, emotional distress,

mental anguish, and other manifestations of the traumatic experience which have resulted in the need for mental health care which is reasonably certain to continue into the future.

48.     Plaintiffs are entitled to damages pursuant to the laws of the United States of America for all compensatory, actual, and consequential damages; and such other and further relief as this Court may deem appropriate including pre and post judgment interest.

49.     Plaintiffs respectfully demand a trial by jury on issues so triable.

This 26th day of July, 2024.

STROM LAW FIRM, LLC

*/s/ Bakari T. Sellers*
Bakari T. Sellers, Esq. (Fed. ID #11099)
6923 N. Trenholm Rd.
Columbia, SC 29206
Phone: (803) 252-4800
bsellers@stromlaw.com